THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MICHAEL D. HILL                                                                                         PLAINTIFF

v.                                        Civil No. 13-3078

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Michael D. Hill, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") Title II (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background**

Plaintiff applied for DIB on November 12, 2010. (Tr. 9.) Plaintiff alleged an onset date of April 22, 2010 due to right wrist problems (carpal tunnel, tendonitis, infection), "spars in neck," and depression. (Tr. 127.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on November 9, 2011 in front of Eliaser Chaparro. (Tr. 24.) Plaintiff was present to testify and was represented by counsel. The ALJ also heard testimony from Jennifer Hill (Plaintiff's wife) and Vocational Expert ("VE") Diane Smith. (Tr. 24.)

At the time of the administrative hearing, Plaintiff was 32 years old, and possessed a high school diploma, special education track. He also had votech training in welding. (Tr. 28.) The Plaintiff had past relevant work experience ("PRW") of trailer welder, hand sander, hand trimmer, construction worker, and sawmill laborer. (Tr. 18.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On April 13, 2012, the ALJ concluded that Plaintiff suffered from the following severe impairments: cervical degenerative disc disease (mild), and right carpal tunnel syndrome; status post carpal tunnel release; and obesity. (Tr. 11.) The ALJ found that Plaintiff maintained the residual functional capacity to perform light work with no mental limitations and "no frequent grasping, or handling with the right upper extremity." (Tr. 13.)

With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as bakery line worker and machine tender. (Tr. 19.)

Plaintiff requested a review by the Appeals Council on April 24, 2102. (Tr. 5.) The Appeals Council declined review on July 15, 2013. (Tr. 1.) Plaintiff filed this appeal on August 6, 2013. ( ECF. No. 1.) Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 12, 13.)

## II.     Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and

that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. See *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III. Discussion

Plaintiff raises two issues on appeal: 1) the ALJ's RFC is not supported by substantial evidence because "the questioning and testimony of the vocational expert essentially revealed that no jobs existed that Michael can perform with one useful, non-dominant upper extremity;" and 2) the ALJ erred by failing to consider medication side effects in his credibility analysis. (Pl.'s Br. 14.) Because the only Physical RFC in the record predates Plaintiff's diagnosis of MRSA-induced osteomyelitis and septic arthritis, and because the ALJ deducted limitations from this RFC without explanation, the other issues will not be addressed.

AO72A
(Rev. 8/82)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).

Although the ALJ is responsible for determining claimant's Overall RFC, the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace.""An administrative law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.) Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). Further, VE "[t]estimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir.1991) (citing *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994)).

In this case, Plaintiff suffered an injury to his right hand at work on April 22, 2010. (Tr. 343.) He was found to have severe carpal tunnel syndrome as well as de Quervain tendonitis. (Tr. 351.) After surgery to effect a de Quervain release and carpal tunnel release, he suffered recurrent infections that did not respond to oral antibiotics. (Tr. 348.) He underwent several deep surgical irrigation and debridements

4

in a six month period. (Tr. 346, 349, 365.) It was ultimately determined that he had MRSA-induced osteomyelitis and septic arthritis by infectious disease specialist Dr. Stephen Hennigan on January 3, 2011. (Tr. 365, 367.) He was admitted to the hospital in order to be placed on IV antibiotics. (Tr. 366.) It was noted that he "may suffer some ongoing arthritis issues." (Tr. 368.) After the IV course was completed on February 14, 2011, he was placed on " a few months of suppressive Bactrim" due to the chronicity of the problem. (Tr. 369.)

"Osteomyelitis is inflammation and destruction of bone caused by bacteria, mycobacteria, or fungi. Common symptoms are localized bone pain and tenderness with constitutional symptoms (in acute osteomyelitis) or without constitutional symptoms (in chronic osteomyelitis). This condition "tends to occlude local blood vessels, which causes bone necrosis and local spread of infection." www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/infections_of_joints_and_bones/osteomyelitis.html?qt=osteomyelitis&alt=sh (accessed Nov. 24, 2014). "Despite the use of surgical debridement and long-term antibiotic therapy, the recurrence rate of chronic osteomyelitis in adults is about 30 percent at 12 months." http://www.aafp.org/afp/2011/1101/p1027.html (accessed Nov. 24, 2014).

Septic arthritis occurs when "[i]nfecting organisms multiply in the synovial fluid and synovial lining. Phagocytosis of bacteria also results in PMN (polymorphonuclear leukocyte) autolysis with release of lysosomal enzymes into the joint, which damage synovia, ligaments, and cartilage. Therefore, PMNs are both the major host defense system and the cause of joint damage." http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/infections_of_joints_and_bones/acute_infectious_arthritis.html?qt=septic%20arthritis&alt=sh. (accessed Nov. 24, 2014.) The joint can be "permanently damaged within hours or days." *Id.*

The only Physical RFC assessment in the record was completed by non-examining Agency Physician Dr. Karmen Hopkins on December 29, 2010, several days prior to Plaintiff's osteomyelitis and

5

septic arthritis diagnosis. (Tr. 353-356.) For this RFC, Dr. Hopkins expressly noted "no signs of osteomyelitis or septic arthritis." (Tr. 356.) Therefore her RFC assessment was based on a diagnosis that did not include these conditions. Even without the osteomyelitis and septic arthritis, her assessment found that Plaintiff was limited in all manipulative activities (reaching, handling, fingering, feeling) in the right hand. Dr. Hopkins further stated that the Plaintiff could use his "right upper extremity as assistive device only." (Tr. 360.)

The ALJ gave Dr. Hopkins RFC great weight and found that it was consistent with the medical record of evidence. (Tr. 17.) This was error in that the RFC did not include all of Plaintiff's impairments. This error was compounded when the ALJ did not include all of the manipulative restrictions or the "right upper extremity as assistive device" restriction from this Physical RFC in his Overall RFC assessment. There is no explanation for removing these limitations.

Nor was the omission of the "right upper extremity as assistive device limitation" a harmless error in opinion-writing which would not affect the outcome of the case. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [the Plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred.") The first hypothetical asked was the one ultimately adopted by the ALJ in his opinion. When the ALJ added the "right upper extremity as assistive device limitation" to a second hypothetical, along with other impairments,[2] the response was that there would be no work. (Tr. 65.)

In summary, the ALJ relied upon a Physical RFC which did not include all of Plaintiff's impairments, and then further compounded the error by deducting manipulative limitations from that Physical RFC without explanation. This requires a remand.

---

[2]Unfortunately, the ALJ did not provide a hypothetical which *only* added the right upper extremity as assistive device limitation.

6

On remand, the ALJ is directed to obtain a Physical RFC Assessment which incorporates all of Plaintiff's impairments, preferably from a treating or examining physician. This RFC must explicitly address Plaintiff's ability to function in the workplace. Any changes to Plaintiff's RFC must then be addressed to the VE. It is also recommended that the record be more fully developed as to Plaintiff's pain profile.

### IV. Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 24th day of February 2014.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)